## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| *GARY ROBERT WARREN,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 09-40-B-W* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that he is disabled by bipolar disorder and panic disorder, capable of returning to past relevant work or, alternatively, of performing other work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from polysubstance abuse, an anxiety disorder, and an affective disorder, Finding 3, Record at 14; that his polysubstance abuse disorder met the requirements of Listing

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 17, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

12.09, Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), but that he had no other impairment or combination of impairments that met or medically equaled one of the Listings, Finding 4, *id*. at 16; that, in the absence of substance abuse, he retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with no physical limitations, retained the cognitive ability to understand, remember, and carry out simple work with a specific vocational preparation code of two or less, could perform low-stress work, defined as requiring only occasional judgment, occasional decision-making, and occasional changes in the work setting, and could interact occasionally with supervisors and co-workers, with no more than incidental contact with the general public, Finding 5, *id*.; that he was able to perform his past relevant work, Finding 6, *id*. at 20; that, considering his age (43 years old, a younger individual, on the alleged disability onset date and 50, defined as closely approaching advanced age, at the time of decision), education (at least high school), work experience (no transferable job skills), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 20-21; and that he therefore had not been under a disability from December 31, 2001, through the date of the decision (October 24, 2008), Finding 11, *id*. at 22.[2]   The Decision Review Board declined to review the decision, *id*. at 1-5, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as

_____

[2] The plaintiff continued to be insured for purposes of SSD benefits through June 30, 2008.  *See* Finding 1, Record at 14.

adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.1520(f)); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The administrative law judge also alternatively reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff complains that the administrative law judge erred in purporting to embrace the findings of Disability Determination Services ("DDS") examining consultant Edward P. Quinn, Ph.D., but omitting to take into account functional limitations attributed by Dr. Quinn to manic episodes, which vocational testimony indicated would preclude full-time employment. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 6) at 2-4. I find no error.

## I. Discussion

After examining the plaintiff on May 4, 2007, Dr. Quinn produced a report dated May 7, 2007, concluding that he suffered from bipolar I disorder, most recent episode mixed, moderate, and panic disorder without agoraphobia, provisional.  *See* Record at 285.  With respect to the plaintiff's work capacity, Dr. Quinn commented:

> [The plaintiff] should be able to follow work rules.  However, at times he may have difficulties due to manic events.  He generally appears capable of relating to others appropriately, based upon his reports.  However, during manic events he may have difficulties.  He should be able to use appropriate gross judgment.  He may have some difficulties dealing with stressors.  He should be capable of functioning independently for the most part.  Difficulties with attention and concentration were noted during today's evaluation and appear to be a function of his mania.  He may have some difficulties with persistence and pace, again because of manic episodes.  During periods of time without mania he may function within normal limits.  Difficulties with memory were not observed.  He is likely to have difficulties completing job tasks during manic episodes, but should be able to complete job tasks when not experiencing mania.  He should be able to maintain personal appearance.  He may have some difficulties behaving in an emotionally stable manner at times, particularly during manic episodes.  He demonstrates limited social skills during today's evaluation, but this appears more to be a function of the mania than any true deficits.  He may have some difficulties with reliability because of mania.

*Id*. at 284.

In a Psychiatric Review Technique Form dated June 1, 2007, and with the benefit, *inter alia*, of Dr. Quinn's report, DDS nonexamining psychologist Lewis F. Lester, Ph.D., found the plaintiff to suffer, absent substance abuse, from severe medically-determinable mental impairments in the form of a mood disorder, an anxiety disorder, and a personality disorder, *see id*. at 298-305, although Dr. Lester did not check a box indicating that the plaintiff suffered from "[b]ipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)[,]" *id*. at 301.  In a mental RFC form of the same date, Dr. Lester deemed the

4

plaintiff, absent substance abuse, (i) capable of understanding and remembering simple, repetitive tasks and procedures, but precluded by his personality disorder, anxiety, and mood instability from performing complex or detailed tasks, (ii) able to be reliable and sustain two-hour blocks at simple tasks at a consistent pace over a normal work day/work week, (iii) unable to interact with the public due to his personality disorder, anxiety, and mood instability, but able to interact with co-workers and supervisors in an ordinary work setting, and (iv) capable of adapting to occasional and routine changes, avoiding common hazards, traveling, and making basic decisions. *See id*. at 328.

In a treatment summary dated August 30, 2007, covering the period from April 13, 2007, through August 30, 2007, Anita Cooley, LMSW-cc, CADC, stated that the plaintiff needed "to manage mental illness symptoms of anxiety and mood instability to avoid negative consequences associated with relapse to depression, anxiety, and erratic behavior, which increase his risk of relapse to substance use." *Id*. at 331. She added: "Due to the intensity of symptoms of mood instability including depression and anxiety that [the plaintiff] experiences, he does not appear to be able to maintain in the workforce." *Id*.[3]

In progress notes spanning roughly the same period of time, from April 17, 2007, through August 6, 2007, Bert I. Beverly, M.D., a treating physician, described the plaintiff's bipolar condition as stable and noted that the plaintiff denied mood swings. *See id*. at 377-86. With respect to the plaintiff's anxiety and depression, another treating physician, Jonathan Karnes, M.D., described him on July 9, 2008, as "doing fairly well on no meds." *Id*. at 442. The plaintiff complained, during an initial assessment for medication management and outpatient therapy with

_____

[3] Cooley also counseled the plaintiff from December 4, 2006, through April 12, 2007. *See* Record at 332. During both sessions, her stated objective was to support the plaintiff's substance abuse recovery efforts and reduce his relapse risk while increasing his ability to manage his mood. *See id*. at 331-32.

Rowena Tessmann, PMH-NP, of Cornerstone Behavioral Health on August 8, 2008, that he had an upcoming disability hearing, was having a lot of anxiety and panic, was very high-strung, and was experiencing mood swings.  *See id*. at 447.  Tessmann noted that the plaintiff's speech was rapid and that she was not sure if this was a result of anxiety or hypomania.  *See id*.

The plaintiff's hearing was held on September 8, 2008.  *See id*. at 23.  During the hearing, psychologist Ira Hymoff, Ph.D., testified that he had no reason to disagree with Dr. Quinn's assessment, and that "if there were, you know, hypomanic episodes, that would certainly have some impact."  *Id*. at 51.

At hearing, the plaintiff testified that he experienced manic episodes an average of two to three times per week, for at least an hour at a time.  *See id*. at 36, 54-55.  Upon being read Dr. Quinn's statement regarding the plaintiff's work capacity and hearing the plaintiff's testimony as to the frequency of his manic episodes, a vocational expert present at the plaintiff's hearing testified: "I'd interpret that as being quite frequent and with that much interruption with persistence of [sic] pace, needing extra supervision, completing job tasks and reliability, then it certainly would impact all jobs" and would eliminate full-time work.  *Id*. at 55.

In assessing the plaintiff's mental RFC, the administrative law judge stated:

> Great weight has . . . been given to the May 7, 2007, opinion of Edward P. Quinn, Ph.D., that when not manic, the claimant should be able to follow work rules, relate to others appropriately, use appropriate gross judgment, function independently, complete jobs tasks, maintain personal appearance, and function within normal limits (Exhibit 8F), as it is well supported and consistent with the evidence as a whole.

*Id*. at 19.  He added: "While the [plaintiff's] substance abuse counselor, Anita Cooley, L.M.S.W., opined on August 30, 2007, that the claimant does not appear to be able to maintain in the work force due to the intensity of his symptoms and mood instability (Exhibit 14F), she failed to describe any specific functional limitations, and failed to consider the effects of his

6

ongoing substance abuse on his ability to function. Therefore, this opinion has been given little weight." *Id*. at 20. He stated that he found the DDS nonexamining opinions, including that of Dr. Lester, well-supported and consistent with the record as a whole and therefore had given them considerable weight. *See id*.

While not specifically discussing the plaintiff's testimony concerning the frequency of his manic episodes, the administrative law judge found his statements concerning the intensity, persistence, and limiting effects of his impairments not credible to the extent inconsistent with his RFC findings. *See id*. at 17. He noted, *inter alia*, that the plaintiff had required no psychiatric hospitalization, had not sought or received ongoing counseling for his allegedly disabling symptoms, with his treatment primarily consisting of psychotropic medications, that treating sources had described his condition as stable in April, May, and July 2007, and very stable on August 6, 2007, and that he had been reported to be doing fairly well on no medications at all on July 9, 2008. *See id*. at 17-18. He added: "The medical evidence of record demonstrates that when the claimant abstains from using substances, and takes his medications as prescribed, his symptoms improve and his impairments are stable." *Id*. at 18 (citations omitted).

I find no error in the administrative law judge's handling of the Quinn opinion. At oral argument, counsel for the commissioner offered a reasonable reading of the decision as having accorded great weight to Dr. Quinn's findings regarding the plaintiff's condition when *not manic*. *See id*. at 19. In any event, even if the administrative law judge meant to credit the opinion generally, Dr. Quinn did not quantify the frequency of the plaintiff's manic episodes. *See id*. at 284. Nor did any other treating or consulting source, including Dr. Lester, Dr. Hymoff,

and Cooley.  *See id*. at 51, 328, 331.[4]  As the commissioner's counsel pointed out, the only evidence of record that the plaintiff suffered manic episodes two to three times a week was his own testimony at hearing.

The frequency of manic occurrences plainly was a major factor in the vocational expert's testimony that a person suffering such occurrences could not maintain any full-time employment. While the administrative law judge did not expressly discuss the plaintiff's specific testimony on that point, he made reasonably clear that he discounted it, noting, for example, that the plaintiff's condition was stable when he refrained from abusing substances and took prescribed medication, a proposition for which he cited, *inter alia*, the above-described treatment notes of Drs. Beverly and Karnes documenting the stability of the plaintiff's bipolar condition and/or his denial of mood swings during those visits.  *See id*. at 18, 278, 377-86, 440-42.  In so doing, he supportably resolved conflicts in the record.  In such circumstances, the court does not intervene to substitute its own judgment.  *See, e.g., Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

---

[4] Although Cooley referred to "the intensity of [the plaintiff's] symptoms of mood instability[,]" she offered no elaboration.  Record at 331.  In addition, she addressed the plaintiff's condition during the period from April 13, 2007, through August 30, 2007, *see id*., a period during which Dr. Beverly described his bipolar condition as stable and noted that he denied mood swings, *see id*. at  377-86.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be

***AFFIRMED***.

### *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.***

***Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.***

Dated this 29th day of September, 2009.


/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge